Good morning, counsel. Good morning. May it please the court, Robin Packle representing Petitioner Appellant Bautista. I'd like to reserve three minutes for rebuttal and I will keep an eye on the clock. I'd like to start off, I know the court is very familiar with the record and the allegations in this case but I would like to start just just framing what is at issue here. Mr. Bautista's attorney Varnell refused Bautista's request to communicate to the judge that Bautista wanted to replace Varnell with retained counsel of choice. In other words, Varnell refused to advocate for Mr. Bautista, refused to assist him. That's kind of one of the most basic duties of an attorney and then Varnell lied to Mr. Bautista about a fact that Varnell knew was material, important to his decision-making, in the words of the Supreme Court in Lee, to his plea. Having violated those most basic duties of representation, I don't know how we can say that Mr. Bautista was represented by counsel at all in connection with his plea in this case. But it isn't what we would say. We're assessing the California Superior Court. That's correct, Your Honor, and let's look at what the California Supreme, sorry, Superior Court actually said. They made two findings without an evidentiary hearing and without providing counsel for Mr. Bautista. Those two findings were... Can you stop you here for a second and you can finish answering the question, which is, would you, are you recommending that we would send this back for an evidentiary hearing? I think the court, if it goes, at least if it goes the structural error route, can resolve it, this case, without an evidentiary hearing and grant the petition. But yes, I think at a minimum this court should remand for an evidentiary hearing. Go ahead. So to respond to the court's questions about what the California Superior Court actually did. So the two findings it made were, number one, that Mr. Bautista could not have hired retained counsel. And there, the record shows that he could and that he had taken steps, at least taken steps, towards doing that. The court, the Superior Court, made these findings without an evidentiary hearing and this court has made it clear that in Bradley v. Henry, to cite one case, when when the court makes a decision about a defendant's ability to hire retained counsel, it needs to hold an evidentiary hearing. So there was support. Mr. Bautista's allegations before the Superior Court were that he was prepared to retain counsel and there was nothing in the record before the Superior Court that shows that he could not have done those, perhaps with the assistance of Ms. Alvarado. But just to test you legally and factually, the Supreme Court in Lee does warn courts, Federal courts, don't upset pleas on post hoc assertions of counsel deficiency. And therefore, why would the, why was a hearing necessary if the plea colloquy went ahead and Bautista under oath said, no threats, the plea is voluntary, and then importantly said, and every question I've had was answered by my attorney? So I don't And then went to sentencing. So I'm going to try to keep all this in my head. First of all, I think in response to sort of contemporaneous evidence in the record, there was the fee agreement. It was two days after the plea colloquy, but that I think shows, along with the sworn declarations of Alvarado and the verified petition of Mr. Bautista, that I think that at least lends But again, I'm just going to interrupt just because your time is precious, but as Judge Mendoza said, that's there, but that's equally susceptible to the view that a friend said you could probably get a better deal with another attorney, and that attorney Belez, we even know he could have, but he doesn't. He never files a motion to withdraw, and when he gets to sentencing, he's there with Varnell, and there's no objection yet again. So we have sworn statements of the defendant, and what you don't have in this record is an affidavit from Bautista himself. So it really just looks like a friend said to him, geez, get a better deal, get another lawyer, but then he consciously decides, I'll stick with what I got. There's a lot to respond to there. So first of all, Mr. Bautista's petitions were verified. That means they were sworn. He's sworn that the allegations were true. Second of all, I think the fee agreement is circumstantial evidence that supports that there were discussions underway with a particular attorney. This is not, oh, theoretically, I could have found some attorney out there. I could have found it. I think that that shows that. Third, with respect to what happened at the plea colloquy, at that time, Mr. Bautista did not know he had been lied to. It's clear from the allegations that he discovered that only after he entered the plea based on Varnell's representations that Ms. Alvarado had told him to go ahead and plead guilty, when before the lie, Bautista had not. The lie would be good cause to move to withdraw the plea, but he goes to sentencing two weeks later. First of all, the constitutional error has already happened. The constitutional error happened when he entered the plea without his retained counsel of choice and with, based on the advice, the recommendation of a lawyer who had lied to him, even though he didn't know that at the time. That's why he said, although I disagree that the plea colloquy, the colloquy is as detailed inquiry into his satisfaction with counsel as plea colloquies are in federal court. There was sort of one compound question, were your questions answered? Are you satisfied? I think the record— What do we do with the issue of the Superior Court applying the wrong standard as to choice of lawyer? What do we do with that? The Superior Court, it cited the Hill standard, which the respondent says is the only proper standard, but it didn't actually apply that standard. It made the two factual findings. One is that Mr. Bautista could not have retained counsel, and two, that any retained counsel would not have gotten a better deal. Also a factual finding, also made without an evidentiary hearing or counsel in the habeas proceeding, and also contrary to the record. I mean, if there had been an evidentiary hearing, maybe Bellis would have explained his experience with the system, why he believed he could have gotten or would have gotten a better deal, but that's deficient fact-finding. It's not supported by the record, and it was made without an evidentiary hearing. I thought that the Superior Court applied a prejudice standard, that is, that the attorney—excuse me, that Mr. Bautista needed to establish prejudice. Did they do that? I think that's what they purported to do. I don't think they correctly focused on what was at issue here, and what was at issue here really is the relationship, Mr. Bautista's relationship with his counsel. He had none at that point, at the point that he entered the plea. Counsel had not advocated for him. Counsel had lied to him. That is a complete breakdown in the attorney-client relationship. He failed in the most basic duties. I mean, that's looking at it as through sort of the structural error lens. I think if you're looking at it through the sort of traditional Strickland analysis, was this a proper prejudice analysis? Then you also can find prejudice, and that the District Court was unreasonable in its prejudice analysis, again, because of deficient and unreasonable fact-finding, and also because Mr. Bautista, under the Hill standard, Mr. Bautista said, I would not have taken this deal, but for my counsel's lies to me. And that, I think, for a pro se petitioner, it sort of misses the, and I would have gone to trial, but that is an allegation of prejudice under Hill, that I would not have taken the deal had I known that counsel had lied to me. I think that's a sufficient allegation under these circumstances. So I think even going Strickland route. Right, but going Strickland route, the Superior Court was pretty exhaustive, and then the District Court, yet again, likewise saying, the record here contains recorded calls where your client confessed to the victims. So it's sort of irrefutable proof, and then he gets a single count plea, and he locks a significant reduced exposure. That seems to me, doing the Hill analysis, that we don't think he would have gone to trial. Well, again, I don't think that's what the Superior Court did here, and under AEDPA, that's the analysis. This court has to look at what the Superior Court based its decisions on, and those were those two factual findings about he couldn't have retained counsel, and retained counsel couldn't have gotten a better deal. But also, I think it's important to note that the Supreme Court has also, in cases, particularly Lee, talked about that the sentence somebody faced, and the deal they could have got, is not the be-all and end-all of the prejudice analysis. Lee talks about a client's decision-making, and when there are matters that are important to the client, for example, in Lee, it was misadvice about deportation. So what was important to Mr. Bautista was who was representing him. He wanted different counsel. He didn't get different counsel because of... Just to just, because I'm sure you want to reserve time. So the relief, back to the first question, the relief question. You, the most your client would get would be back to square one. He gets to withdraw his guilty plea, and the government then can come at him with how many counts? That's, I forget how many there were. There were many counts, I agree, and he was facing a very long sentence. But what he got was a life sentence. So it was the difference between possibility of parole after 15 years, which was the plea deal, and possibility of basically never getting parole. But I think Lee, again, and other Supreme Court cases made clear that a client can make a rational decision to reject a plea based on factors other than he would have received a worse sentence. And at least we didn't get a full development of that because no evidentiary hearing was ever made. And if there were a remand for a hearing, it would be with instructions to the district court to send it back to the state court for the hearing? I believe the district court can do the hearing. The federal court. The federal district court can do the hearing because federal district courts are not precluded from doing an evidentiary hearing. The facts are the same. And just last question. Yeah. Do you have a Ninth Circuit case that remanded for a federal habeas hearing into a Sixth Amendment claim? Does one come to mind? That's a specific case, so don't worry if you don't. There is a... Can I answer that on your end? Yeah, that's very helpful. That's the right answer, yes. Okay. Thank you. I will reserve the rest of my time. Thank you. Thank you. May it please the Court, Michelle Swanson appearing on behalf of Respondent Warden. First I would address the question with respect to whether the Superior Court properly applied the Hill standard in assessing prejudice. The Superior Court expressly cited Hill and set forth the prejudice standard and it... What they're saying is that it wasn't... Practically, it wasn't analyzed. In other words, it was cited but it wasn't... That was not the reasoning. Well, it did. First of all, it said it found no prejudice, immediately cited Hill, and then it went into addressing some of Bautista's claims. Do they need to show prejudice on choice of lawyer? Choice of counsel? Well, he didn't raise a freestanding claim of choice of counsel. What he said was that if counsel had brought his motion to discharge him and replace him with retained counsel, that the trial court would have conducted an evidentiary hearing on that and granted that. So even in his petition, Bautista recognized that he did not have an unqualified right to counsel of his choice at that point. And... Barnell starts as retained. Did he become then appointed? Yes. He was... There's no dispute. He was appointed at the time of the plea hearing. Okay. And I will just add this as a... This isn't really... Since he didn't raise a freestanding claim, but I would just like to note that there's no clearly established law that an indigent defendant that is currently has appointed counsel and has not retained counsel and has made a... Is going to make a request on the day of a change of plea hearing, has an unqualified right to counsel of choice under those circumstances. That's just to the side. It's not really an issue here since that wasn't brought. Going back to the question of whether the Superior Court did conduct proper prejudice analysis, it found that a... But I'm sorry, just on that point, there would be a valid Sixth Amendment structural argument if it were true that counsel lied to him in order to get him to plea. Put aside right to change counsel if you've gotten appointed. I agree that's a different analysis. But crediting his complaint, we have a lawyer who's lying to him in order to get him to  That's evaluated under Strickland in effective assistance of counsel. So that's evaluated for prejudice. It's not structural error. Okay. I have to think about that. I'm separating out the alleged denial of the right to change counsel from a lawyer who lies to you. Right. I think that... Well, let me ask it a little bit different.  Isn't... And Judge Higginson might be getting to this. The lie was related to getting a structural problem of counsel, of one's choice. I don't believe so because the lie had to do with whether Alvarado thought it was a good deal. And that was the lie. So it really had nothing to do with him not telling the court about the new lawyer. I mean, I guess I could see how it would relate. Like, if he thought Alvarado thought it was a good deal, then he just kind of gave up the fight on that. But again, there was no structural error was raised in the petition. So that's a non-issue from our standpoint. Well, let's assume you're wrong. Okay. And there is a structural issue contemplated in this case. Do you still have... Do you at that point lose or not? Well, first, you would have to find it was exhausted in the state courts. And you would have to find that the district court passed upon it. The district court didn't pass upon that question. I would say it would remand to the district court. It would be the proper procedure. We've never addressed the merits of structural error claims. But the district court itself implied that it saw faulty reasoning in the superior court. But not because of structure, like that it didn't address structural error or anything like that. That wasn't brought up by the district court. I'm not sure what the district court was talking about. It didn't really expand on what it found faulty exactly about the superior court's decision. Well, I mean, I think it seems pretty obvious. I'm posing counsel's argument is that they analyzed it only under Strickland. And therefore, they resolved the whole habeas, state habeas according to lack of prejudice, which, by and large, I see difficult issues. But maybe I'm accepting that that wouldn't be reversible under federal habeas et pedeference. But if the district court was mistaken to assess a structural error and deny it purely on prejudice grounds, that would be inconsistent with clearly established law. Well, the district court didn't say that the — they didn't say that the superior court made a mistake in the — applying the Strickland prejudice standard. That's not what it said. But that is the argument here today to us. Well, but my point is that the district court didn't — didn't — wasn't presented that issue, and it didn't — it didn't pass on that issue. And Ninth Circuit law generally says that if district court hasn't passed on a legal issue, then we can't pass — you can't pass on that on appeal. I would think that the proper procedure would be if you believed that it was exhausted and properly presented in the federal petition, which I've addressed in my supplemental briefing, if you believed both of those things had happened, it needs to go back to the district court, because everything changes at that point. And we need to — the government needs to be able to address that on the merits. And an appellant hasn't really ever addressed that on the merits. There was some, you know, brief briefing in the appellate brief, but there was no briefing in the federal petition at all. And the first time that even Petitioner himself brought up — first of all, he never brought up the constructive denial of counsel at all in his federal petition or in any of his federal pleadings. And the only time he brought up, in a substantive way, the denial of the right to choice to counsel was in his traverse and in his request for a COA. And that's too late. It needs to be brought in the petition, and it needs to be exhausted in the State courts. I mean, one alternative answer — I thought it was in your brief, but maybe it's not — is that, in fact, the Superior Court did make a secondary filing that, to the extent a structural error had been alleged, there wasn't sufficient proof, that when you look at the colloquy, the Rule 11 colloquy in the sentencing, in fact, there's no evidence that supports anything more than a friend saying you can get a better deal. Did the Superior Court make a structural error? No, that the Superior Court's two findings, twin findings — one, deficient showing to trigger relief under any method of analysis. Two, Hill prejudice analysis, we deny the Strickland portion. But you disagree with my — Well, maybe — maybe we're talking — maybe we're — I'm misunderstanding. So Hill encompasses the Strickland standard. It just restates it when you have pled guilty. So it's all of a piece, if I can say that. So when the Superior Court found that it was not reasonably probable that he would have obtained a better deal, there was no evidence to the record that he could have, what it was saying was that — so he would have been stuck with the 15 years to life and trial, and the Superior Court already had evidence of what he would do in that circumstance. When he — when that was the best deal he could get, he took the deal. He didn't want to go to trial. And that is — it was addressing Bautista's allegation with respect to whether — that he would have held out for a better deal, and it said, no, you wouldn't have obtained that. So you would — you wouldn't have gone to trial. You didn't satisfy Hill's standard. Now, it didn't say it like that. It didn't — it didn't have a nice, you know, paragraph about that and kind of come full circle. But it doesn't have to do that. We don't impose on the State courts, you know, that their — their — you know, that their opinions have to be flawless. And so I would say that it did — it did make that Hill analysis. It cited it. It said it found no prejudice under Hill. And then it found that he would not have received a better deal. Under those circumstances, we know he wouldn't have gone to trial. If that was the best deal he could get, he took it, and he would have taken it if he had had retained counsel. And then all of this sort of is — doesn't really matter in the end because, as Bautista understands, he didn't allege that he would have gone to trial. He said, I would have Let's see. Primo v. Moore, the Supreme Court said, that's not enough to satisfy the Hill standard. And in Lee v. United States, the Supreme Court declined to reach that question of whether that would satisfy it. When there's no clearly established law that that is the standard, then the Petitioner is not entitled to relief. And so the — the Superior Court's rejection of the ineffectiveness claim was not contrary to any clearly established law. And so Bautista loses under that point as well. I think that what was important to Bautista was a better deal. And the Superior Court found that that was not going to happen. The Superior Court did not have to hold an evidentiary hearing on that point because, as Lee v. United States says, the contemporaneous evidence at the time of the plea to see what would have happened. And we have plenty of contemporaneous evidence. He submitted a fee agreement between Ms. Alvarado and Bellis & Bellis that agreed — in which they agreed that they would represent him to file a motion to withdraw counsel and, if that was denied, to appeal on his behalf. So do you think he was just upset at the fact that he got, as counsel indicates, this longer sentence? Is that — is that why the appeal ultimately happened? I'm sorry. I'm not understanding the question. Well, the — because, you know, he — we know he had a retainer agreement, right, or some agreement that was submitted as part of the materials here. And he didn't appeal. He didn't say anything at the plea. He didn't say anything at the sentencing. But then later filed the appeal. Is it because he got this longer sentence at the sentencing? He got the sentence he was — that he bargained for at the sentencing. I — quite frankly, it's — I'm — I'm — it surprises me that he would want to appeal this because he is facing — he wouldn't get the — you know, he wouldn't necessarily get this deal if you reversed. It — we go back, and the parties go back to the state they were at the time. They don't have to reoffer this plea at all. And he's facing a substantial — basically an LWOP sentence. He's facing almost certain eviction. What does that translate for humans? Life without the possibility of parole. I'm sorry about that. That's okay. And he was facing strong evidence against him, including his very own admissions to the police, that he molested one of the victims. He got a really good deal. He got — he pled to one count of child molestation. He got 15 years to life, which means he will be up for parole, I think, very soon. You know, not that he might — he might not get it, but at least the possibility is there. And that's the best he could do. And so — I'm trying to remember. Is it similar to — I know the standard in Washington State where these are indeterminate sentences where they go to the parole board, and then they could decide not to release the person even after they've completed their, you know, minimum sentence. Is that what happens? That's correct. Right. They just become eligible once they've served that sentence. As far as the district court conducting an evidentiary hearing, the district court would — could only do that if it found that the state court's decision was contrary to an unreasonable application of Supreme Court law. It didn't find that. If this court were to find that, then it could remand to the district court, and then the district court would have to then consider the provo, in which case it could exercise its discretion to hold an evidentiary hearing. And does that come down to whether we construe our COA grant to go beyond the Strickland prejudice issue to a constructive denial of counsel? If we were to see that he both exhausted that and it's encompassed in the COA, what's your answer as to what we would do with that? I would say remand to the district court for consideration of those issues. And then we can raise our procedural issues down there and merits, and it can all be fleshed out. But I don't think you have to do that because I think he loses because there's no clearly established law that he can establish prejudice by saying that he would have obtained a better deal. Well, before you have a minute left, would you agree that if we think that a constructive denial of counsel had been presented to the California Supreme Court, then the analysis it gave, the Hill analysis, is in violation of clearly established law? If that was made to them, that counsel didn't exist at all as opposed to ineffectively? Well, I would say what would change if you found that he had raised this constructive denial since the Superior Court didn't spot that issue and didn't address the issue, then the relevant state court decision becomes Cal Supreme, and that changes everything because then this court has to presume what Cal Supreme would have decided, and that changes everything on that particular issue, constructive denial of counsel. Well, we would look through it. They didn't have any reasoned opinion, right? Well, but when there's a summary denial, then you look at the highest. When there's no reasoned state court opinion, look at the last decision and Cal Supreme's rejection on the merits, even though it was summary, that is reviewed with deference under EDPA. Okay. Thanks. Unless there are any other questions, I'm prepared to submit the matter. All right. Thank you.  Is she right about that last point? Because I think she is. I could take five minutes adjusting this, but yes. Okay. I mean, I think the claim was fairly presented to the structural error claim and was fairly presented to the superior court, so I think that court is the decision you look at. You do look through, as Your Honor said. So I think that is that. If the claim was not presented at all or not ruled on on the merits, then yes, you look at whether the court could have come up with any reason, basically, to deny the claim. In the habeas submission to the superior court, was any Supreme Court authority cited other than Strickland, ineffectiveness, Hill-type case law? What? Did he cite? Yes. Any effect? He did cite, he cited Hill, sorry, he cited Strickland. Right. Constructive denial of counsel. There's that sentence. I believe he also cited Gonzales. He cited legal authority that this was outside Strickland and Hill. This couldn't be resolved through a prejudice. Our position is that by citing the provision from Strickland that talks about constructive denial of counsel, which he cited on the form part of the petition, that that alerted the court to a constructive denial of counsel argument. Alerted the court? Yes. As a pro se petitioner and under the fairly presented, all he needs to do is give the court an opportunity, and he cited constructive denial of counsel. And what did the federal district court do about that? So the federal district court actually took a kind of completely different approach. It didn't really, other than saying we think the reasoning of the superior court is kind of funky in some ways. What it looked at in its prejudice analysis was basically that finding that Mr. Bautista would not have risk going to trial because of the long sentence, which disregards the counsel issue altogether, disregards the lie, disregards the ---- So you think at every stage of habeas, state and federal, no courts ever wrestled with the structural claim, but it was fairly presented? Yes. Again, I think we need to review Mr. Bautista's pro se petitions with leniency, but I think he cited the cases. The factual basis is exactly the same. You have different reasoning and different analyses from both courts. I think so it's not, you know, maybe it was not a model of clarity, but I think those claims are fairly ---- What is the single fact that most clearly establishes that Varnell lied to him? Can you quote a verbatim just from your head? He said ---- According to whom? Both Ms. Alvarado and Bautista say that after the plea, Varnell and Bautista, sorry, before the plea, after Varnell had refused Bautista's request for substitute counsel, for assistance presenting that to the court, Mr. Bautista said, where is Maria Alvarado? Varnell said, this is a paraphrase, but said she was here earlier, she had to leave to go to school. She said you should take the plea offer because it's the best deal you're going to get. And then, so Mr. Bautista then went into court and he pled. Afterwards, after court, he's talking to Maria Alvarado on the phone, and again this comes from both Mr. Bautista's verified petitions and Ms. Alvarado's sworn declaration. They were talking on the phone after court. He says, where were you? She said, I had a flat tire. I could not make it to court today. He says, there may have been some, he says, I took the deal. I pled guilty. She said, why did you do that? He said, Varnell told me that you were in court and you told him to tell me to take the deal. All right, counsel, I think your time is up. Let me see if there are any other questions. Can I just give you one site? I'm sorry. Shell v. Witek, 218 F. 3rd, 1017. You had asked for a case that remands to the district court for an evidentiary hearing. Thank you, counsel. Thank you to both counsel. I thought it was well argued. This case will stand submitted.
judges: Higginson, MENDOZA, DESAI